THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO: 5:17-CV-604

Stacy Monroe, as administrator for
the Estate of Erline Freeman

           Plaintiff,

v.                                          FEDERAL COMPLAINT

Forjas Taurus, Taurus International
Manufacturing, and Taurus Holdings,
Inc.

           Defendants

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs and diversity of citizenship exists between the named Plaintiff and Defendants.

2. Diversity of citizenship exists in this case for purposes of subject matter jurisdiction.

3. The named Plaintiff is a citizen of North Carolina and none of the Taurus Defendants are citizens of North Carolina. Defendants Taurus International Manufacturing, Inc. ("Taurus Manufacturing") and Taurus Holdings, Inc. ("Taurus Holdings") are citizens of Florida as they are Florida corporations with their headquarters and/or principal places of business in Miami, Florida. Forjas Taurus, S.A. ("Forjas Taurus") is a citizen of Brazil as it is a Brazilian corporation with its principal place of business at Avenida de Forte, 511, Porto Alegre/RS, Brazil.

4. This Court has personal jurisdiction over each of the Taurus Defendants.

5. This Court has personal jurisdiction over Defendants Taurus Manufacturing and Taurus holdings because these Defendants are Florida corporations, have their headquarters and/or principal places of business in Miami, Florida and are engaged directly and through their agents in systematic and

ongoing business transactions in the State of North Carolina and within this District, including but not limited to, the design, testing, manufacture, import, assembly, marketing, supply, warranty, distribution, misrepresentation, and sales of the Class Pistols as well as other conduct in North Carolina as described herein.

6.  This Court has specific and general personal jurisdiction over Defendant Forjas Taurus pursuant to the North Carolina long-arm statute, N.C. Gen. Stat. § 1-75.4 (1)d and (4) a & b. Defendant Forjas Taurus, directly and by and through its agents, including but not limited to Defendants Taurus Manufacturing and Taurus Holdings, has engaged in systematic and ongoing business transactions in the State of North Carolina including the marketing, solicitation, sale and distribution of Pistols and other firearms and the use of such products within the State of North Carolina in the ordinary course of trade. Defendant Forjas Taurus, directly and by and through its agents, including but not limited to Defendants Taurus Manufacturing and Taurus Holdings, has had continuous and substantial business connections in the State of North Carolina, including, upon information and belief, conducting business with individuals located in this State.

7.  This Court has specific personal jurisdiction over Defendant Forjas Taurus because Defendant Forjas Taurus, directly and by and through its agents, including but not limited to Defendants Taurus Manufacturing and Taurus Holdings, as more fully described herein, has:

    a.  operated, conducted, engaged in, or carried out a business venture in the State of North Carolina, including but not limited to, manufacturing the Pistols and other firearms in Brazil under the "Taurus" brand name, importing the Pistols and other firearms under the "Taurus" brand name from Brazil into the State of North Carolina, distributing the Pistols and other firearms in North Carolina and throughout the United States under the "Taurus" brand name, and receiving revenues from such importation and distribution of the Pistols and other firearms under the "Taurus" brand name, such that specific personal jurisdiction arises under N.C Gen Stat. §1-75.4 (1)d and (4) a & b.

    b.  committed various tortious acts within the State of North Carolina, including but not

limited to, intentionally concealing the Safety Device Defect from Plaintiff's Decedent and the public residing inside and outside of North Carolina, such that specific personal jurisdiction arises under N.C Gen Stat. §1-75.4 (1)d and (4) a & b;

c.  caused injury to persons within the State of North Carolina while it was engaged in solicitation of within the State of North Carolina, including but not limited to, injury to the Plaintiff's Decedent in North Carolina caused by the Safety Device Defect while Defendant Forjas Taurus solicited service activities within North Carolina, such that specific personal jurisdiction arises under N.C Gen Stat. §1-75.4 (1)d and (4) a & b; and

d.  caused injury to persons within the State of North Carolina arising out of an act or omission by it outside of the State of North Carolina while products, materials, or things processed, serviced, or manufactured by it in Brazil and elsewhere were used or consumed within the State of North Carolina in the ordinary course of commerce, trade, or use, including but not limited to, causing injuries to Plaintiff Decedents residing in North Carolina arising out of the design, manufacture, distribution, and marketing of Class Pistols outside of North Carolina while Pistols processed, serviced, or manufactured by Defendant Forjas Taurus in Brazil and elsewhere were used or consumed within North Carolina in the ordinary course of commerce, trade, or use, such that specific personal jurisdiction arises under N.C Gen Stat. §1-75.4 (1)d and (4) a & b.

8.  This Court has general personal jurisdiction over Defendant Forjas Taurus because, as described more fully herein, it has engaged in substantial and not isolated activity within the State of North Carolina, including but not limited to, the continuous, ongoing, extensive importation of thousands of  Pistols and other firearms into the State of North Carolina from Brazil under the "Taurus" brand name and distributing the Pistols and other firearms in North Carolina and throughout the United States under the "Taurus" brand name, such that general personal jurisdiction arises under N.C Gen Stat. §1-75.4 (1)d and (4) a & b.

9.  Plaintiff believes that it may require further discovery as pertains to any challenge to personal

jurisdiction in this action.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as to all the Taurus Defendants because as described herein a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district. The Taurus Defendants regularly and systematically conduct business in North Carolina and in this judicial district, including but not limited to, the continuous, ongoing, extensive importation of thousands of Pistols and other firearms into the State of North Carolina from Brazil under the "Taurus" brand name and distributing the Pistols and other firearms into North Carolina and throughout the United States under the "Taurus" brand name. Moreover, upon and information belief, much of the challenged conduct surrounding the Taurus Defendants' defective Pistols occurred in North Carolina. Upon information and belief, the fraud, deception, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts in the distribution, sale, and/or advertisement of the Pistols took place in North Carolina. Upon information and belief, the corporate decision not to disclose, but rather to misrepresent, the known Safety Device Defect was made by the Taurus Defendants Venue is further proper in this District as to Defendant Forjas Taurus pursuant to 28 U.S.C. § 1391(c)(3) because it is a Brazilian corporation and a defendant not resident in the United States may be sued in any judicial district.

## PARTIES

11. Plaintiff Stacey Monroe ("Plaintiff") is a citizen of Cumberland County, North Carolina. Stacey Monroe is the duly appointed qualified executor of the estate of Erline Patrice Freeman, having been appointed as personal representatives of the estate of the decedent by the Clerk of Superior Court and *ex officio* Judge of Probate of Cumberland County, North Carolina.

12. Defendant Forjas Taurus is a Brazilian corporation with its principal place of business at Avenida de Forte, 511, Porto Alegre/RS, Brazil and Forjas Taurus manufactures the Pistols and other firearms in Brazil under the "Taurus" brand name and distributes the Pistols and other firearms in North Carolina and throughout the United States under the "Taurus" brand name via Defendants

Taurus Manufacturing and Taurus Holdings.

13. Defendant Taurus Manufacturing and Taurus Holdings are Florida corporations, operating and conducting business in North Carolina. Defendants Taurus Manufacturing and Taurus Holding's principal place of business is in Miami, Florida. Taurus Holdings is the one hundred percent stockholder of Taurus Manufacturing and they are both in the business of manufacturing, selling, and distributing firearms, including the Pistols, in North Carolina and throughout the United States. In addition, Taurus Manufacturing and Taurus Holdings assembled, marketed, imported, and distributed the Pistols in North Carolina and elsewhere.

14. The Taurus Defendants are so intertwined contractually for each other's liabilities that they are essentially one entity with regard to the allegations in this Complaint.

15. This is an action for wrongful death occurring within North Carolina arising out of acts or omissions outside of North Carolina by these Defendants in which at or about the time of the injury solicitations were carried out by or on behalf of the Defendants within North Carolina serviced and/or products, materials or processed or manufactured by the Defendants were used or consumed within North Carolina in the ordinary course of trade.

## COMMON FACTUAL ALLEGATIONS

16. According to the Taurus Defendants' website, Forjas Taurus S.A. has been producing small arms in Brazil since 1941. In 1968, Forjas Taurus ventured into the U.S. market "by employing the services of a succession of U.S. distributors," but "[t]heir efforts met with only marginal success." As a result, the management of Forjas Taurus made the decision in 1982 to "take the bull by the horns" and open an affiliated United States company in Miami, namely, Defendant Taurus International Manufacturing, Inc. In 1982, when Forjas Taurus began distributing and selling its pistols here in the United States, it considered its brand of firearms to be "an unknown commodity in the United States" and "sales that first year in the United States were limited as a solid distribution system had to be established." In 1984, the Taurus Defendants decided to offer an "unqualified LIFETIME REPAIR POLICY." This "one brilliant piece of marketing

changed the course of the company in this market" and "made everyone sit up and take notice of Taurus Firearms." As a result, according to the Taurus Defendants, the "U.S. company has posted record years ever since." The location of the website providing the history of the Taurus Defendants, including Defendant Forjas Taurus' decision to open an affiliated company in Miami, Florida to import and distribute the Class Pistols and other firearms under the "Taurus" brand name throughout the United States is http://www.taurususa.com/history.cfm and a copy of the "Taurus History and Background Information" from the Taurus Defendants'.

17. The Taurus Defendants openly represent to the public that they "genuinely believe [they] manufacture firearms better than anyone else. Unlike other competitors that are merely 'assemblers' of firearms, **we manufacture everything: from the firing pins** to the magazines to the cutting tools. **Every piece and every part are owned by Taurus**. This results in higher tolerances, lower costs, faster prototypes and breakthrough innovations." See Taurus 2013 Product Catalog at 4, http://www.taurususa.com/pdf/2013_taurus_catalog.pdf (emphasis added) (last visited December 19, 2013).

18. Taurus has designed, manufactured, and distributed certain Pistols is the subject including the Pistol that is of this case which have a dangerously defective Firing Pin Block Safety Device that causes the Pistol to discharge when the Pistol is dropped, the safety is in the "on" position, and no trigger pull occurs.

19. The Pistol includes those Taurus Models manufactured with the Safety Design Defect design described herein. According to Taurus, these particular Models or Series are equipped with certain "SAFETY DEVICES" which are described and illustrated by Taurus as follows:

## Firing Pin Block



The firing pin block, which is designed to prevent the firing pin from going forward and striking the primer is engaged until the trigger is in its final rearward position. This device is designed to preclude an accidental discharge should the firearm be dropped.

## Manual Safety Lever



By moving the safety upward you will block the firing mechanism. Keep the safety on while not using the pistol.

WARNING: To properly apply the manual safety lever, the trigger **must be** in its forward-most position, otherwise the lever can be moved upwards, but will **not be fully engaged.**

**Keep your finger off the trigger while moving the lever upward.**

a.

20. According to Taurus, "[i]f dropped from a height at which the pistol is normally used, the manual safety and automatic safety [i.e. the firing pin block] together provide double strong resistance against accidental firing caused by such impact." Taurus also refers to the "Firing Pin Block" as the "Automatic Safety" and/or "Automatic Firing Pin Block Safety." The Firing Pin Block, Automatic Safety, and Automatic Firing Pin Block Safety are referenced collectively throughout this Complaint as the "Firing Pin Block."

21. The common design of the Firing Pin Block Safety Device on all Pistols is defective and as a result there is nothing to prevent an accidental discharge even when the Manual Safety Lever is turned on and the Pistols are dropped from a height at which the Class Pistols are normally used.

22. Since the design of the Firing Pin Block Safety Device is common to all Defendants Pistols and is defective in all such Pistols, the use and/or maintenance of the Pistols by owners and users of the Pistol have no effect on the defective design of the Class Pistols and the damages resulting from the defective design.

23. The Defendants Pistols have a common latent design defect, namely the Safety Device Defect,

such that if the Class Pistols work as designed they are still defective and would have been a proximate cause of Plaintiff Decedents.

24. For years, the Taurus Defendants have knowingly manufactured, marketed, and sold thousands of defective Pistols with the Safety Device Defect to consumers throughout the United States.

25. Despite knowing about the Safety Device Defect for years, the Taurus Defendants consciously and intentionally decided not to recall the defective the Pistols which they know are unreasonably dangerous and defective because they believe such a recall would have a negative impact on their profits and public image.

26. The Taurus Defendants were aware of the Safety Device Defect on or before 2007. Further, upon information and belief, discovery of internal documents from Taurus will show that Taurus has been aware of the problems with this design and Defect since the early production of the Pistols and discovery will most likely reveal that Taurus has been aware of this Defect since the Pistols were first designed, manufactured, imported, tested, produced, and distributed in the United States.

27. The Taurus Defendants have settled cases which involve this same Defect involving an ever-growing number of grievous injuries and settlements, Defendants refuse to acknowledge that the Pistols are defective, much less take any steps to warn consumers in throughout the United States about the dangers of using the Defendants Pistols including the Pistol which was the subject of this case. Instead, the Taurus Defendants continue to ignore indisputable evidence of the Defendants Pistols' Safety Defect which has been known to and documented by the Taurus Defendants dating back to at least 2007.

28. In 2007, the Taurus Defendants were made aware of the Safety Device Defect when Taurus Manufacturing was named as a Defendant in a lawsuit filed in the Circuit Court of Etowah County, Alabama, styled Adam Maroney v. Taurus International Manufacturing, Inc., CV-07-073-ACH. This lawsuit arose from the following facts. In February 2005, Adam Maroney's Taurus Pistol fell out of his pocket onto the garage floor and discharged, sending a bullet up through Mr. Maroney's pancreas, spleen, diaphragm, and lungs. Mr. Maroney's Taurus Pistol was a PT 111,

which is one of the Taurus pistol models included in the Class Pistols. Mr. Maroney had the Manual Safety properly on at the time his Taurus Pistol dropped to the garage floor. In the Maroney case, Taurus admitted that a Taurus PT 111 Pistol can discharge if it is dropped from a height at which the pistol is normally used. See Trial Testimony of Mr. Morrison, Trial Tr. at 124, Maroney v. Taurus International Manufacturing, Inc., Case No. 07-73 (Ala. Cir. Ct. dismissed 2009.)

29. In the Maroney case, Taurus retained their own expert (James C. Hutton) who conducted drop tests (the "Taurus Drop Test") on "brand new" Taurus Pistols equipped with the Taurus Firing Pin Block Safety Device. The Taurus Drop Test was an attempt, **albeit a failed attempt**, to prove that the common design of the Firing Pin Block Safety Device was not defective and that the design of the Firing Pin Block served the purpose of preventing the Firing Pin from going forward and striking the primer when the Class Pistols are dropped. The results of the Taurus Drop Test confirmed what Taurus already knew -- that the Firing Pin Block Safety Device is defective in design and purpose. Specifically, the expert witness for Taurus admitted in the Maroney case that the Taurus Drop Test showed an indent in the primer came from the Firing Pin going forward and striking the primer. In other words, Mr. Hutton admitted that the design of the Firing Pin Block Safety Device does not prevent the Firing Pin from going forward and striking the Firing Pin. As a result, the design of the Firing Pin Block Safety Device will not preclude an accidental discharge should the Class Pistols be dropped from a height at which they are normally used.

30. Robert G. Morrison, the CEO for Taurus Manufacturing, testified under oath, to the following in the Maroney trial: "My answer to the question if you are referring to all PT 111s, it is I believe that they can go off if dropped." Further, Mr. Morrison testified that it is also foreseeable that the ultimate consumer of a Class Pistol, such as the Model PT 111 Pistol, may drop it.

31. There was ample evidence in the Maroney case to support a verdict against Taurus Manufacturing for its explicit desire to achieve profits at the expense of public safety and the safety of individuals who own a Class Pistol. The jury in Maroney returned a verdict against Defendant

Taurus Manufacturing for $1,250,000.00. Taurus Manufacturing did not appeal the jury's verdict, and the case was settled for a confidential amount.

32. In 2009, Ms. Judy Price was severely injured when her Taurus Pistol Model PT-140 discharged, with the Manual Safety Lever properly on, after she accidently dropped her Taurus Pistol from a height at which it is normally intended to be used. The bullet entered her thigh, and then went through her colon and intestines and the bullet remains lodged in her liver. Ms. Price had months of complications and surgeries. Taurus entered tinto a settlement agreement with Ms. Price in 2011 and the amount she received pursuant to the settlement agreement remains confidential.

33. Despite all of the information Taurus has in connection with the defective design of the Firing Pin Block Safety Device and that the Class Pistols will discharge when dropped from a height at which they are normally used without the trigger being pulled and with the Manual Safety Lever properly set to prevent an accidental discharge, Taurus has not undertaken any effort in the United States to inform the public and/or individuals who own Class Pistols about the Defect, or to issue any recalls and replace or repair the Class Pistols.

34. The allegations in this Complaint are well-supported by the troublesome history of the Defendant Pistols, the harmful, sometimes life-threatening, consequences of their use by consumers, as well as the Taurus Defendants' continuing denial or failure to acknowledge the Defect. These critical facts about the Defendant Pistols and the Defect have been hidden from the public by the Taurus Defendants' pattern of concealing the Defect and refusing to warn the public despite the Taurus Defendants' knowledge of the Defect.

35. The Defendants Pistols including the Pistol which is the subject of this action are defective and inherently dangerous, and Taurus has known about the Defect for years, but has allowed the Pistols to remain in the hands of unsuspecting gun owners to the imminent risk of harm to the owners of the Pistols and the public.

**FACTUAL ALLEGATIONS**

36. On or about December 13, 2015 the decedent, Erline Patrice Freeman was visiting the her friend, Richard Pugh-Newby=s, in the home owned by Jenniefer Pugh-Newby, located at 6540 Wicklow Place, Fayetteville, North Carolina 28304.

37. On said date a permitted a loaded firearm which was pistol manufactured, imported, marketed and sold by Defendants was placed on top of the refrigerator in the residence. The pistol was owned by Richard Pugh-Newby. The firearm was accidentally knocked off of the refrigerator, hit the kitchen floor, discharged and struck decedent causing Erline Patrice Freeman=s death. The pistol had its safety engaged at the time it fell to the kitchen floor.

38. Plaintiff has suffered or incurred at least the following damages for the wrongful death of the Deceased including, (a)Expenses for care, treatment, and the like, incident to the injury resulting in death; (b) Compensation for the Deceased's pain and suffering prior to her death; (c) The Deceased's reasonable funeral expenses; (d) The present monetary value of the Deceased to the persons entitled to receive the damages including, but not limited to, compensation for the loss of the reasonably expected net income of the Deceased, services, protection, care, and assistance of the Deceased, and the Deceased's society, love, companionship, comfort, guidance, kindly offices, and advice; (e) Damages for the loss of the life of the Deceased and for the loss of the enjoyment of life; (f) Other damages not herein specifically enumerated; and, (g) nominal damages.

## ESTOPPEL AND TOLLING OF STATUTE OF LIMITATIONS

39. The Taurus Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of fraudulent concealment, which include the Taurus Defendants' intentional concealment from Plaintiff, owner of the Pistol, Plaintiff's Decedent and the general public that the Pistols, including the subject Pistol, are defective, while continually marketing the Pistols with the "Safety Device" features described herein.

40. Given the Taurus Defendants' affirmative actions of concealment by failing to disclose this known but non-public information about the Safety Device Defect – information over which the Taurus Defendants had exclusive control – and because Plaintiff therefore could not reasonably have

known that the Pistols were defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

<div align="center">

**Count One**

**Negligence**

</div>

41. Plaintiff, incorporates by reference paragraphs 1 through 40 and all as though expressly stated herein in this paragraph.

42. At all times relevant to this action, the Taurus Defendants had the duty to exercise that degree of care that a reasonably prudent firearm manufacturer and/or distributor should use in the design, testing, selection, manufacture, assembly, marketing, supply, distribution and sales of Defendants' Pistols. Notwithstanding this duty, and in violation thereof, the Taurus Defendants negligently and carelessly designed, tested, selected, manufactured, assembled, marketed, supplied, distributed, and sold Pistols with the Safety Device Defect including the Pistol that shot and killed Plaintiff's Decedent. As a direct and proximate result of this breach of duty, Plaintiff's Decedent exposed to a substantial, clear, and unreasonable risk of serious injury or death and was in fact shot and killed by the Pistol. The shooting, injury and death were proximately caused by the negligence of the Defendants.

43. Plaintiff d e m a n d s judgment against the Taurus Defendants for compensatory damages for the wrongful death of Decedent.

<div align="center">

**Count Two**

**Strict Liability In Tort – Restatement (Second) Of Torts §402A**

</div>

44. Plaintiff, incorporates by reference paragraphs 1 through 44 as though expressly stated herein in this paragraph.

45. The Taurus Defendants designed the Pistols including the Pistol involved in this case with the Safety Device Defect, rendering the Defendants Pistols inherently dangerous and creating a substantial, clear, extreme and unreasonable risk of serious injury or death to Plaintiff decedent and

other members of the public.   The Taurus Defendants manufactured, assembled, marketed, distributed, and sold the Defendants Pistols with the Safety Device Defect.   The Defendants Pistols were in the same defective condition due to the Safety Device Defect from the time they left the Taurus Defendants' control until they reached the Plaintiff of whom use the Defendants Pistols in the manner intended by the Taurus Defendants.

46. The Pistols were sold in substantially and unreasonably dangerous condition to an extent beyond that which would be reasonably contemplated by the ordinary consumer, the owner of the Pistol which shot and killed Plaintiff's Decedent.

47. As a direct and proximate result of the facts alleged above, Plaintiff's Decedent was exposed to a clear, substantial, and unreasonable risk of serious injury or death from the Safety Device Defect.

48. The Taurus Defendants are strictly liable in tort for all injuries, damages, and losses that resulted from the unintentional and unwanted discharge of their Pistol proximately causing the death of Plaintiff's decedent.

49. Plaintiff demands  judgment  against  the Taurus Defendants for compensatory and punitive damages as provided in the North Carolina Wrongful Death Statute § 28A-18-2.

**Count Three**

**Breach of Express Warranty**

50. Plaintiff, incorporates by reference paragraphs 1 through 50 as though expressly stated herein in this paragraph.

51. The Taurus Defendants provided with each of Defendant Pistols including the Pistol involved in this case express warranties which are made to every owner of a Pistol, including the Pistol in this case. The Taurus Defendants have memorialized these express warranties in writing. These express warranties are set forth in the Taurus Manual, the "Limited Warranty," the "The Taurus Lifetime Repair Policy," and the "Taurus Unlimited Lifetime Repair Policy™" --- written documents which are provided with the Pistols and which are also published on the public website of the Taurus Defendants. Each of the express warranties set forth in the Taurus Manual, the

"Limited Warranty," the "The Taurus Lifetime Repair Policy," and the "Taurus Unlimited Lifetime Repair Policy™" is a separate and independent express warranty made to owner of the pistol who relied upon the express warranties in his use of the pistol which reliance proximately caused decedent's injury and death.

52. The express warranties made to the Plaintiff, the owner of the Pistol and the Plaintiffs decedent set forth in the Taurus Manual, include the following: (a) that the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (b) that there is "SAFETY AGAINST ACCIDENTAL FIRING FROM DROPPING;" (c) that "[i]f dropped from a height at which the pistol is normally used, the manual safety and automatic safety together provide double strong resistance against accidental firing caused by such impact;" (d) that "[t]he firing pin block" is "designed to prevent the firing pin from going forward and striking the primer . . . until the trigger is in its final rearward position;" (e) that the Pistols were "designed to preclude an accidental discharge should the firearm be dropped;" (f) that "[b]y moving the safety upward you will block the firing mechanism;" (g) that the Pistols were "carefully inspected and test fired in order to ensure that it conformed to our specifications and standards." The Taurus Defendants breached these express warranties by not providing a product which could provide the benefits described in this paragraph and as a result of the Taurus Defendants' breach of these express warranties, Plaintiff was damaged by the wrongful death of Plaintiff's decedent.

53. The express warranties made to the Plaintiff, the owner of the Pistol and the Plaintiffs decedent set forth in the "Limited Warranty," include the following: (a) that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship;" and (b) that it "extends to any owner of a Taurus handgun manufactured after July 3, 1975." Plaintiff in privities of contract with the Taurus Defendants and/or are the express beneficiaries of the express warranties set forth in the "Limited Warranty" and these express warranties became part of the basis of the bargain. The Taurus Defendants breached these express warranties by not providing a product which could provide the benefits described in this paragraph and as a result of

the Taurus Defendants' breach of these express warranties, Plaintiff have been damaged by the wrongful death of Plaintiff's decedent. Notwithstanding the express warranties described in this paragraph, the owner of the Pistol and Plaintiff's decedent were denied the full benefit of the bargain.

54. The express warranties made to the Plaintiff and set forth in the "The Taurus Lifetime Repair Policy" include that Taurus "will repair, free of charge, any weapon manufactured or distributed by Taurus International."

55. The express warranties made to the Plaintiff and set forth in the "Taurus Unlimited Lifetime Repair Policy,™" include the following: (a) the "Taurus Unlimited Lifetime Repair Policy™" is for the "lifetime of the gun . . . not the buyer;" (b) that the Taurus Defendants "stand behind [their firearms] for a lifetime;" (c) that the Taurus Defendants' "unprecedented repair policy stands firmly behind every firearm imported or manufactured by Taurus International;" (d) that the "full terms" of the Taurus Unlimited Lifetime Repair Policy™ are that the Taurus Defendants "will repair your Taurus firearm FREE OF CHARGE for the lifetime of the firearm;" and (e) that the Taurus Defendants are "totally committed to the very highest standards of quality, dependability, and most of all, customer satisfaction." The Taurus Defendants breached these express warranties by not providing a product which could provide "the very highest standards of quality, dependability, and most of all, customer satisfaction" and the Taurus Defendants' breach of these express warranties, proximately caused the wrongful death of Plaintiff's decedent.

56. The Taurus Defendants provided the express warranties described in paragraphs 51 through 55 to Plaintiff, the owner of the Pistol and Plaintiff decedent and each have relied upon these express warranties.

57. The owner of the pistol and the Plaintiff's decedent are the express beneficiaries of the express warranties described in paragraphs 51 through 56. To the extent required by law, the Taurus Defendants have expressly waived privity of contract as a requirement to the enforceability of any of their express warranties.

58. Notwithstanding these express warranties, and in breach thereof, the Taurus Defendants designed the Pistols with the Defect, which rendered the D e f e n d a n t s Pistols in breach of the express warranties, unmerchantable, nonconforming, and unsafe for normal use and created a clear, substantial, and unreasonable risk of serious injury or death to Plaintiff's decedent and the public.

59. The breach of the express warranties described in paragraphs 61 through 69 is a proximate cause of the Plaintiff's decedent wrongful death.

60. Plaintiff decedent demands judgment against the Taurus Defendants for compensatory damages as provided by the North Carolina wrongful death statute § 28A-18-2.

### Count Four

### Breach of Implied Warranty Of Merchantability

61. Plaintiff incorporates by reference paragraphs 1 through 60 hereto as though expressly stated herein in this paragraph.

62. At all times mentioned herein, the Taurus Defendants designed, manufactured, marketed, distributed, and sold the Defendant Pistols with the Firing Pin Block Safety Device, and prior to ownership of the Pistols by Plaintiff, the Taurus Defendants impliedly warranted to Plaintiff, the owner of the Pistol and Plaintiff's decedent that the Pistols were of quality and fit for the use for which they were intended, that the Pistols were merchantable, would operate effectively, were safe for normal use, suitable for the ordinary and usual purposes for which they were intended, and would not create an unreasonable risk of injury to consumers.

63. The owner of the Pistol and Plaintiff's decedent in owning and/or using the Defendants Pistols, relied upon the skill and judgment of the Taurus Defendants.

64. The Defendants Pistols are unfit for their intended use and are not of merchantable quality, as warranted by the Taurus Defendants, in that they had and/or have the propensities to fail to perform and protect, including but not limited to, accidentally discharging when dropped from a normal height of intended use and the Manual Safety Lever is properly in the "on" position to prevent an accidental discharge, when put to their intended use. The Pistol caused Plaintiff's decedent

to sustain damages as herein alleged specifically causing the death of Plaintiff's decedent.

65. The Taurus Defendants designed and manufactured the Pistols using a defective Firing Pin Block Safety Device. The Taurus Defendants designed, manufactured, marketed, distributed, and placed the Pistols into the stream of commerce knowing and expecting that the Pistols would be used by consumers and around the general public and by distributing the Pistols, Taurus impliedly represented to Plaintiff, the owner of the pistol and Plaintiff's decedent that the Pistols were merchantable, would operate effectively, were safe for normal use, suitable for the ordinary and usual purposes for which they were intended, and would not create an unreasonable risk of injury to consumers.

66. The Taurus Defendants were on notice of the breach of implied warranties at the time the Pistols were manufactured and distributed by Taurus. The Taurus Defendants knew, or should have known, that the Pistols had a propensity to discharge when dropped from a normal height of intended use and the Manual Safety Lever is properly in the "on" position to prevent an accidental discharge.

67. The Taurus Defendants caused their implied warranties to fail their essential purpose, thereby causing the implied warranties to fail the Pistol owner, the Plaintiff's decedent and others similarly situated.

68. Plaintiff demand judgment against the Taurus Defendants for Plaintiff's decedent w r o n g f u l d e a t h demands judgment against the Taurus Defendants for compensatory damages as provided by the North Carolina wrongful death statute § 28A-18-2.

**Count Five**

**Magnuson-Moss Warranty Act**

69. Plaintiff incorporates by reference paragraphs 1 through 68 hereto as though expressly stated herein in this paragraph.

70. The express and implied warranties as described in Counts Four and Five are subject to the provisions and regulations of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, *et seq.*

71. To the extent required by law, the Taurus Defendants have expressly waived any basis of the bargain requirement as to Plaintiff, Plaintiff's decedent and the owner of the Pistol by extending the express and implied warranties described in Counts Three and Four to any owner of a Pistol and not restricting these warranties solely to the buyer of a Pistol.

72. Plaintiff, the owner of the Pistol and Plaintiff's decedent are "consumers" as defined in the MMWA. Defendants are "suppliers" and "warrantors" as defined by the MMWA.

73. The Pistols in question are "consumer products" as defined in the MMWA and the Class Pistols were manufactured and sold after July 4, 1975. The express warranties provided by the Taurus Defendants and/or required by statute to be provided by the Taurus Defendants are a full "written warranty" as defined in the MMWA.

74. The Taurus Defendants breached the express and implied warranties as described in Counts Three and Four.

75. The Taurus Defendants had sufficient notice because they were aware or should have been aware of the Safety Device Defect at the time of the manufacture and/or sale of the Pistols.

76. The Taurus Defendants' conduct described herein is a violation of the MMWA.

77. By virtue of the foregoing, Plaintiff is entitled to an award of damages and other appropriate relief, including attorneys' fees and costs, as allowed by the MMWA. Further, the MMWA provisions allowing recovery of attorneys' fees, costs, and expenses, applies to any consumer who prevails on any warranty affected by the MMWA, whether express and/or implied warranties.

## Count Six

### Fraudulent Inducement And/Or Suppression

78. Plaintiff paragraphs 1 through 77 as though expressly stated herein in this paragraph.

79. The Taurus Defendants made false statements of material facts to Plaintiff, owner of the Pistol and Plaintiff's decedent when they made representations in the Taurus Manual, the "Limited Warranty," and the "Taurus Unlimited Lifetime Repair Policy™" --- written documents which are provided with the Pistols and which are also published on

the public website of the Taurus Defendants.

80. In particular, the Taurus Defendants made false statements of material facts to Plaintiff, the owner of the Pistol and Plaintiffs decedent when they made representations in the Taurus Manual as follows: (a) that the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (b) that there is "SAFETY AGAINST ACCIDENTAL FIRING FROM DROPPING;" (c) that "[i]f dropped from a height at which the pistol is normally used, the manual safety and automatic safety together provide double strong resistance against accidental firing caused by such impact;" (d) that "[t]he firing pin block" is "designed to prevent the firing pin from going forward and striking the primer . . . until the trigger is in its final rearward position;" (e) that the Pistols were "designed to preclude an accidental discharge should the firearm be dropped;" (f) that "[b]y moving the safety upward you will block the firing mechanism;" (h) that the Pistols were "carefully inspected and test fired in order to ensure that it conformed to our specifications and standards."

81. In particular, the Taurus Defendants made false statements of material facts to Plaintiff, the owner of the Pistol and Plaintiff's decedent when they made representations in the "Limited Warranty" that the Pistols are "free from defects in material and workmanship."

82. In particular, the Taurus Defendants made false statements of material facts to Plaintiff, the owner of the Pistol and Plaintiff's decedent when they made representations in the "Taurus Unlimited Lifetime Repair Policy,™" that the Taurus Defendants are "totally committed to the very highest standards of quality, dependability, and most of all, customer satisfaction."

83. At all times relevant herein, the Taurus Defendants were in a position of superiority to Plaintiff, the owner of the Pistol and Plaintiffs decedent and as such had the duty and obligation to disclose to Plaintiff, the owner of the Pistol and Plaintiffs decedent that (a) the Taurus pistols were NOT manufactured to perform properly with the original parts as designed; (b) that there was NOT "SAFETY AGAINST ACCIDENTAL FIRING FROM DROPPING;" (c) that "[i]f dropped from a height at which the pistol is normally used, the manual safety and automatic

safety together" would NOT "provide double strong resistance against accidental firing caused by such impact;" (d) that the Pistols were NOT safe against accidental firing from being dropped from a height at which the pistol is normally used; (e) that "[t]he firing pin block" was NOT "designed to prevent the firing pin from going forward and striking the primer . . . until the trigger is in its final rearward position;" (f) that the Pistols were NOT "designed to preclude an accidental discharge should the firearm be dropped;" (g) that "[b]y moving the safety upward you will" NOT "block the firing mechanism;" (h) that the Pistols were NOT "carefully inspected and test fired in order to ensure that it conformed to our specifications and standards;" (i) that they failed to disclose to, or concealed from, Plaintiff, the owner of the Pistol and Plaintiff's decedent, material facts about the defective nature of the Pistols, including but not limited to the Safety Device Defect; (j) that they knew there were defects in the Pistols, including but not limited to the Safety Device Defect, which would result in injury or death; (k) that the "[h]andguns manufactured by Taurus" are NOT "free from defects in material and workmanship;' and (l) that the Taurus Defendants are NOT "totally committed to the very highest standards of quality, dependability, and most of all, customer satisfaction."

84. The Taurus Defendants knew or should have known of the falsity of the material facts or statements and they also intended that these false statements and concealment or suppression of material facts would induce reliance by Plaintiff, the owner of the Pistol and Plaintiffs decedent in lawfully possessing the Pistols among other things.

85. The Taurus Defendants concealed and/or failed to disclose the truth for the purpose of inducing Plaintiff, the owner of the Pistol and Plaintiff's decedent to rely upon all these false statements and/or concealments of material facts.

86. Plaintiff, the owner of the Pistol and Plaintiff's decedent justifiably relied to their detriment on the concealed and/or non-disclosed material facts as evidenced by their ownership and/or use of the Pistols. Had they known of the true character and quality of the Pistols, Plaintiff, the owner of the Pistol and Plaintiff's decedent would not own or use the Pistols or situate

themselves in proximity of the Pistol.

87. The conduct described herein, including but not limited to the Taurus Defendants' deliberate placing of the defective Pistols into the stream of commerce, the Taurus Defendants' doing so with the intention of perpetuating the sale of the defective Pistols notwithstanding the danger to individuals such as Plaintiff's decedent, and the lengths to which the Taurus Defendants have gone to conceal the existence of that Safety Device Defect from the public, is oppressive, fraudulent and malicious, and entitles Plaintiff to an award of punitive damages.

88. As a direct and proximate cause of the Taurus Defendants' misconduct, Plaintiff has suffered damages for the wrongful death of Plaintiff's decedent.

89. Plaintiff demands judgment against the Taurus Defendants for compensatory and punitive damages, plus attorney's fees, interest and costs as provided by the North Carolina wrongful death statute § 28A-18-2.

## Count Seven

### Negligent Failure To Disclose, Failure To

### Warn, Concealment And Misrepresentation

90. Plaintiff incorporates by reference paragraphs 1 through 89 hereto as though expressly stated herein in this paragraph.

91. The Pistols are an inherently dangerous commodity and the Taurus Defendants at all times relevant had a duty to disclose to and warn Plaintiff, the owner of the Pistol and Plaintiffs decedent truthfully and accurately, and not to conceal or misrepresent such truth, about the Safety Device Defect, and a duty to provide a fair and adequate warning of the dangerous potentiality of the Pistols due to the Defect.

92. By the Taurus Defendants designing, manufacturing, failing to test, marketing, distributing, and placing an inherently dangerous commodity such as the Pistols in the channels of trade, then by the very nature of their commercial activity, the Taurus Defendants have a duty to provide a fair and adequate warning of the dangerous potentiality of the Pistols due to the Defect.

93. The Taurus Defendants could foresee that the Pistols, due to the latent Defect, posed a clear, substantial and unreasonable risk of personal injury and death. The proper measure of duty for the Taurus Defendants in designing, manufacturing, testing, selling, marketing, and distributing an inherently dangerous commodity such as the Pistols is the reasonable foreseeability that serious injury or death might result from the use of the commodity.

94. Notwithstanding this duty, and in violation thereof the Taurus Defendants carelessly and negligently failed to disclose to and warn Plaintiff, the owner of the Pistol and Plaintiffs decedent, and concealed and misrepresented the truth, about the latent Safety Device Defect which posed a clear, substantial and unreasonable risk of personal injury and death.

95. Because Plaintiff, the owner of the subject Pistol and Plaintiffs decedent did not have an equal opportunity to discover such truth about the fact that Taurus Defendants' pistol was defectively designed Plaintiff, the owner of the Pistol and Plaintiffs decedent own and/or use the Pistol in a manner that was reasonable, but, unbeknownst to them, the belief the Pistol was fit for use, merchantable, and reasonably safe for its intended purpose was false.

96. Because the Pistols were not in fact fit for use, merchantable, and reasonably safe for their intended purposes, and because of the Taurus Defendants' negligent failure to disclose and warn and their concealment and misrepresentation of such facts, as a direct and proximate result Plaintiff's decedent was exposed to a clear, substantial and unreasonable risk of serious injury and death and in fact suffered death proximately caused by Defendants.

97. Plaintiff demands judgment against Taurus for damages wrongful death as provided by as provided by the North Carolina wrongful death statute § 28A-18-2 plus attorney's fees, interest and costs.

### Count Eight

### Fraudulent Concealment And Intentional Failure To Warn

98. Plaintiff incorporates by reference paragraphs 1 through 97 hereto as though expressly stated herein in this paragraph.

99. The Taurus Defendants fraudulently concealed and intentionally failed to warn Plaintiff, the owner

of the subject Pistol and Plaintiffs decedent of the Safety Device Defect with the intent to deceive Plaintiff, the owner of subject the Pistol and Plaintiff's decedent into ownership and/or use Pistols without knowledge of the Defect which poses a clear, substantial and unreasonable risk of personal injury and death.

100.     The Taurus Defendants falsely and fraudulently represented to Plaintiff, the owner of the Pistol and Plaintiffs decedent that their Pistols were safe for normal use.

101.     Plaintiff, the owner of the subject Pistol and Plaintiff's decedent   reasonably   and justifiably relied on the Taurus Defendants' false and fraudulent representations, and on the Taurus Defendants' deliberate silence, concerning the highly significant and material fact that the   Pistols were not safe for normal use, as a result of which, to their detriment, they elected to own and/or use   Pistols without knowledge of such fact.  There were no reasonable means for the owner of the subject Pistol and Plaintiff's decedent to make themselves aware of such fact, since the Taurus Defendants have retained tight control of the relevant information concerning the Safety Device Defect.

102.     As a direct and proximate result of the Taurus Defendants' fraudulent conduct, of both commission and omission, Plaintiff's decedent was exposed to a clear, substantial and unreasonable risk of personal injury and death during the owner of the Pistol's use of the Pistol and such injury and death in fact resulted.

103.     Plaintiff demands judgment against the Taurus Defendants for compensatory and punitive damages for wrongful death plus attorney's fees, interest and costs.

## PRAYER FOR RELIEF

1.  The Plaintiff recover from the Defendants' jointly and severally compensatory damages in excess of $75,000.00 as provided by the North Carolina Wrongful Death Statute;

2.  The Plaintiff recover from the Defendants' punitive damages in an amount determined by the jury;

3.  The Defendants' by taxed with the costs of this action including attorney's fees in the extent allowed by law;

4. A trial by jury; and

5. Such additional relief as the Court deems appropriate.

Dated:   12/11/17

<div style="margin-left: 40%;">

Attorney for Plaintiff


  /s/ Coy E. Brewer, Jr.
Coy E. Brewer, Jr.
NC Bar Number: 481
Post Office Box 2249
Fayetteville, NC 28302
Telephone: 910-339-4370
coybrewer@lawyerbrewer.com

Respectfully submitted by:


  /s/ Allen Rogers
Allen Rogers
Attorney for Plaintiff
NC Bar Number 15557
111 Person Street
Fayetteville, NC 28301
Tel:     910-433-0833
Fax:   910- 433-0908

</div>